E-FILED
Monday, 22 June, 2020  10:19:20 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF ILLINOIS

# URBANA DIVISION

| | |
|---|---|
| EUGENE L. WAAS, )<br><br>Plaintiff, )<br>v. )<br>)<br>THE CITY OF CHAMPAIGN ILLINOIS, )<br>THE CITY OF CHAMPAIGN POLICE )<br>DEPARTMENT, )<br>MICHAEL SWANEY, in his Official )<br>Capacity as an Officer with the City of )<br>Champaign Police Department, Sargent )<br>David Frost, in his official capacity with the )<br>City of Champaign Police Department as the )<br>Supervisor of Michael Swaney, DC Holly )<br>Nearing, Individually and in her Official )<br>Capacity as an administrative officer with )<br>the City of Champaign Police Department, )<br>Chief R. T. Finney, Individually and in his )<br>Official Capacity as the Person in Charge of )<br>the City of Champaign Police Department, )<br>Chief Anthony Cobb, Individually and as the )<br>Person in Charge of the City of Champaign )<br>Police Department, Jami Painter, )<br>Individually, Douglas Beckmann, )<br>Individually, and JOHN DOES, )<br>)<br>Defendants. )<br>) | Civ. Act. No._____<br><br><br>COMPLAINT<br>(Jury Trial Requested) |

- 1 -

## COMPLAINT

COMES NOW Eugene L. Waas and makes and files this Complaint against Defendants The City of Champaign Illinois; The City of Champaign Police Department; Michael Swaney, in his Official Capacity as an Officer with City of Champaign Police Department, Sargent Thomas Frost in his official capacity as the direct supervisor of officer Michael Swaney, Deputy Chief Holly Nearing, individually and in her Official Capacity as an Officer with the City of Champaign Police Department, Jami Painter, individually, Douglas Beckmann, individually, Chief of Police R. T. Finney, individually and in his Official Capacity as the Chief of Police of the City of Champaign Police Department, Chief Anthony Cobb, individually and in his Official Capacity as the Chief of Police of the City of Champaign Police Department, and certain John Does, as follows:

## PARTIES

**1.**

Plaintiff Eugene L. Waas ("Plaintiff") and at all times relevant to this litigation, Plaintiff was an Employee of the University of Illinois.

**2.**

Defendant the City of Champaign Illinois is an agency or political subdivision of the State of Illinois and may be served with process through, Fredrick C. Stavins,

- 2 -

City Attorney, 102 N. Neil Street, Champaign, Il 61820 and/or Mayor Deborah Frank Feinen, Champaign City Building, 102, N Neil St. Champaign, IL 61820.

**3.**

Defendant the City of Champaign Illinois Police Department is an agency or political subdivision of the City of Champaign, Illinois and may be served with process through Anthony Cobb, Chief of Police, Champaign Police Department, 82 E. University Ave. Champaign, IL 61820 and/or Fredrick C. Stavins, City Attorney, 102 N. Neil Street, Champaign, Il 61820.

**4.**

Defendant Chief of Police Anthony Cobb, at all times relevant to this action was an employee and in charge of the City of Champaign Illinois Police Department, and may be served with process through Fredrick C. Stavins, City Attorney, 102 N. Neil Street, Champaign, Il 61820.

**5.**

Defendant Chief of Police R. T. Finney, at all times relevant to this action was an employee and in charge of the City of Champaign Illinois Police Department, and may be served with process through Fredrick C. Stavins, City Attorney, 102 N. Neil Street, Champaign, Il 61820.

**6.**

Defendant Deputy Chief of Police Holly Nearing ("Nearing") at all times relevant to this action was an employee of the City of Champaign Illinois Police Department. Nearing oversaw enforcement of Administration and Professional Standards, for the City of Champaign Illinois Police Department and may be served through Anthony Cobb, Chief of Police, Champaign Police Department, 82 E. University Ave. Champaign, IL 61820 and/or Fredrick C. Stavins, City Attorney, 102 N. Neil Street, Champaign, Il 61820 and/or Holly Nearing 1911 Brynebruk Drive, Champaign IL 61822-9242.

**7.**

Defendant Michael Swaney, in his Official Capacity as an Officer with City of Champaign Police Department at all times relevant to this action, and may be served through Anthony Cobb, Chief of Police Champaign Police Department, 82 E. University Ave. Champaign, IL 61820 and/or Fredrick C. Stavins, City Attorney, 102 N. Neil Street, Champaign, Il 61820.

**8.**

Defendant Sargent David Thomas Frost in his Official Capacity as an Officer with City of Champaign Police Department was at all times relevant to this action, the direct supervisor of Defendant Michael Swaney and may be served through Anthony Cobb, Chief of Police Champaign Police Department, 82 E. University

Ave. Champaign, IL 61820 and/or Fredrick C. Stavins, City Attorney, 102 N. Neil Street, Champaign, Il 61820.

**9.**

Defendant Jami Painter ("Painter") is the Associate Vice President of Human Resources at the University of Illinois and may be individually served with process at the University of Illinois, System Human Resources, 807 South Wright St. Suite 454, Champaign, Il. 61802 or at 403 Aspen Ct., St. Joseph, IL  61873.

**10.**

Defendant Douglas Beckmann ("Beckmann") was up until October 31, 2011, the supervisor of Plaintiff at the University of Illinois and may be served with process at 501 W. Dunbar Street, Mahomet, Il. 61853.

**11.**

Defendant John Does are unknown and unidentified individuals who assisted the named defendants in a civil conspiracy to injure the Plaintiff and deprive Plaintiff of his civil rights and have caused injury to the Plaintiff through their actions. Plaintiff expects the identities of unknown John Does will be discovered during this litigation and their names will be added to this case as their identities and actions are clarified and revealed.

## JURISDICTION

### 12.

Plaintiff's federal claims arise under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

### 13.

Plaintiff's federal claims arise under 42 U.S.C. §1983 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

### 14.

Plaintiff's state law claims arise from the same transaction and controversy as Plaintiff's federal claims.

### 15.

This court has personal jurisdiction by virtue of defendants having committed a tort in the State of Illinois in the furtherance of their conspiracy.

### 16.

Jurisdiction and venue are proper in this Court.

## FACTUAL AND COMMON BACKGROUND TO ALL COUNTS

### 17.

Mr. Lorenzo Johnson, a reputed electronics expert, and his wife, Mary Jane Johnson, lived next door to Plaintiff at 2304 Naples Court in Champaign, Illinois and the residents shared a common wall between the two condominium units.

**18.**

Plaintiff asked Mr. Johnson several times through the common wall to please "keep the noise down" so he would be able to sleep.  The Johnson's response was to continue the harassment and noise.

**19.**

The negative responses to Plaintiff's requests for keeping the noise down led to the Plaintiff spending over $2,000 to reinforce the sound proofing of the common wall in his suite.

**20.**

Mr. Johnson apparently, to circumvent the sound proofing, began to make loud noises using a sound amplifier to make intermittent loud popping sounds throughout the night.

**21.**

On at least one occasion both Mr. and Mrs. Johnson came over to Plaintiff's condo in the middle of the night and both rang the doorbell and beat on the front door yelling angrily attempting to get Plaintiff to come to the door to confront Plaintiff about supposedly hearing the sound of flatulence coming from Plaintiff's bedroom and on occasion the bathroom according to the Johnsons' yelling.

**22.**

Plaintiff was not seeking a face to face confrontation with the two elderly Johnsons, so he just ignored this repeated harassing tactic by the Johnsons and did not answer the door.

**23.**

Plaintiff also found that his residence had been illegally entered and electronic devices (equipped with magnets of some sort) had been attached to Plaintiff's bed inside two concealed holes cut open in his box springs.[1]

**24.**

These two devices effectively amplified the electronic disturbance emanating from Mr. Johnson's residence.[2]

---

[1] Plaintiff had come home early one day and found Mrs. Johnson trying to enter a passcode to open Plaintiff's garage door. Plaintiff had changed his passcode after he moved into his unit. The Johnson's had been caretakers of the Plaintiff's unit prior to his purchase. Mrs. Johnson left at once when she saw Plaintiff driving up. The Johnsons, however, also had kept keys to the door locks which Plaintiff found out were not turned over as should have been done by the Johnsons.

[2] Plaintiff did not have the time with his workload to launch and take part in a criminal investigation if he reported the actions by the Johnsons to the police department. Plaintiff also felt it would be disrespectful to not allow some latitude to the elderly couple.

**25.**

Plaintiff did not want in any way to have a confrontation with the Johnsons about this matter and in that regard did not want to bring this matter to the condo association unless absolutely necessary. Nor did Plaintiff want to involve the police in the crime of breaking and entering against the then 80-year-old elderly man and woman who were apparently doing this as some sort of hobby or distraction.

**26.**

Plaintiff sought legal advice from a lawyer to peacefully resolve the situation and it was recommended that he write his concerns to Mr. Johnson.  Plaintiff, as recommend by counsel, sent Mr. Johnson an email on May 11, 2011.

**27.**

According to a copy of the Champaign Police Department Report received on October 18, 2011 through a Freedom of Information Act ("FOIA") request, by Plaintiff **(See Attachment I)**, at 7:29 a.m. on May 12, 2011, Mr. Johnson, and his daughter, Suzanne M. Rinehart, ("Rinehart"),[3] called the Champaign Police Department dispatch claiming Plaintiff was misbehaving by contacting Mr. Johnson by email, complaining about noise preventing the Plaintiff from sleeping.  The report

---

[3] An employee of the University of Illinois Champaign/Urbana campus in the Budget and Finance Department.

documented that Officer ("Defendant") Michael Swaney responded to the call and arrived at the Johnson residence at 8:13 a.m. on Thursday, May 12, 2011.

**28**.

After two and one-half hours on the scene, as documented in the attached police reports, Plaintiff's email was first shown to Defendant Swaney. What happened during the hours before the email (the purported entire basis for dispatching Defendant Swaney) was produced is unknown (***emphasis added).*** Significantly, there is no time on the Metropolitan Computer Aided Dispatch ("METCAD") dispatch ticket report nor his police report documenting Defendant Swaney "clearing the scene." This is a required part of dispatch documentation according to "Intelligence Analyst" Sarah Burgener of the City of Champaign Police Department.

**29.**

According to the police report, **Attachment I**, Defendant Swaney offered alternative courses of action to resolve the noise complaint between the Plaintiff and the Johnsons. Defendant Swaney asked the Johnsons and Reinhart if they wanted him to "go next door" and talk to the Plaintiff about the issues the email raised. He also suggested they could all go to the condo association to resolve the dispute.

**30.**

The Johnsons and Rinehart refused both suggestions. They insisted that Defendant Swaney complete a police crime report and take it directly in to the University of Illinois, ("University") the Plaintiff's and Rinehart's employer. Defendant Swaney did so. Defendant Swaney used only the one-sided input from Rinehart and the Johnsons[4] when he wrote the police report[5] under the direction of the Rinehart. The report, absent certain vital information, was "approved" as submitted by Sargent Thomas Frost ("Frost"). **(See Attachment 1)**.

Defendant Swaney also violated Champaign Police Procedures and Policy by wrongfully making a medical diagnosis in the report of Plaintiff being a "Paranoid Schizophrenic."[6] Defendant Swaney had abused his position as a police officer as did Frost and the result was Plaintiff's career being ruined at the University, and in his career field, effectively destroying the lifestyle of Plaintiff.

---

[4] This is a violation of Champaign Police Policy and Procedures ("CPPP") Section I, C, 5, c, (1), and Section I, D, 1.

[5] The first version of the police report by Defendant Swaney obtained by the Plaintiff had the diagnosis of the Plaintiff suffering from "mental illness" redacted. This version was obtained by the Plaintiff through a FOIA request made in October of 2011. The second version of the police report (**See Attachment 2**) was received on June 24, 2019, through a second FOIA. The second version of the police report had the improper and baseless diagnosis of mental illness, unredacted.

[6] CPPP, Section I, D, 1.

**30.**

Frost, Swaney's supervisor, also violated the same Champaign Police Department policy by approving the unfounded, baseless, libelous and illegal police report[7] that unbelievably ended up in the Department of Human Resources at the University of Illinois, the employer of Plaintiff and Reinhart. This department was the home department of Defendant Jami Painter, now an Associate Vice President of the University.

Defendant Deputy Chief Nearing deliberately and knowingly covered-up through redaction the unfounded medical diagnosis of Plaintiff being a "Paranoid Schizophrenic" for the Defendant City of Champaign Police Depart in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[8]  **(See Attachment 2)**

---

[7] See 720 ILCS 5/26-1(4).  A person or person commits disorderly conduct when he/she knowingly: (4) Transmits or causes to be transmitted in any manner to any peace officer, public officer or public employee a report to the effect that an offense will be committed, is being committed, or has been committed, knowing at the time of such transmission that there is no reasonable ground for believing that such an offense will be committed, is being committed, or has been committed. Violation of this section is a Class 4 Felony which can result in fines and/or imprisonment.

[8] Under *Brady*, (Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963)) the United States Supreme Court found that the government violates the *Due Process Clause of the Fourteenth Amendment* when it "fails to disclose evidence materially favorable to the accused."

**31.**

Besides being a violation of CPPP, Defendant Swaney had no qualifications nor training to issue a medical diagnosis, and furthermore such a diagnosis and the related criminal charge, 2890 Disorderly Conduct 720-5/26-1 against Plaintiff was made without any contact whatsoever with the Plaintiff[9] and without any investigation of the criminal allegations in the email committed against the Plaintiff.[10] The Plaintiff had no notice of the criminal charge against him.

**32.**

Swaney failed to investigate the serious allegation of breaking and entering made by the Plaintiff against the Johnsons, which was one important basis for Plaintiff sending the email and a key subject in the email (**See Attachments 1 and 2**). The state of Illinois classifies breaking and entering as a burglary charge regardless of if there were stolen items or not. It is a crime that needs only intent to commit another crime in order to be punishable as a felony.[11]

---

[9] Violation of CPPP Section I, C, 5, a, (3) and Section I, E, 2, a, (12).

[10] Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

[11] See: ILCS Criminal Code of Illinois § 720 5/- 196.

- 13 -

**33.**

It was clear under Illinois law that Defendant Swaney, Defendant Frost, Rinehart and the Johnsons had conspired to file a fabricated police report which under Illinois law is a crime.[12]

**34.**

Defendant Swaney's illegal police report with the criminal charge and baseless diagnosis **(See Attachment 2)** was turned over to the University for disposition of the criminal charge.

Mr. Robert Easter, then the Chancellor of the University of Illinois's Champaign campus, and a long-time personal friend of the Johnsons used his executive authority to decide how to handle the City of Champaign Police Department criminal charge and baseless diagnosis of Plaintiff.

**35.**

On Monday, May 16, 2011, underlined unknown to Plaintiff at the time, the contrived and illegal police report became the nexus for Defendant Painter of Human Resources and Defendant Beckmann to take the following actions. A meeting was held at 1:00 p.m. whereby the Plaintiff was given a document by Defendant Beckmann and Defendant Painter. The document stated due to the conflict with the

---

[12] See footnote 7 above.

Johnsons and the claims he made against them, Plaintiff was to leave the Champaign/Urbana campus of the University at once and was not allowed to be back on University property until he completed psychological testing by a psychiatrist, a neurologist and other doctors designated by and approved by the University.[13] During the meeting Defendant Painter stated that if Plaintiff would confess that he made "everything up" or "imagined everything" about the actions of the Johnsons Plaintiff could return to his job.

When Plaintiff tried to explain the circumstances, Defendant Painter put her hands over her ears and said she was not trained to listen to (the mentally ill) Plaintiff. The Plaintiff as instructed left the campus. Plaintiff was put off campus for seven months for "fitness for duty" testing.  The Plaintiff was never allowed to return to his supervisory position, despite negative findings and numerous recommendations by Plaintiff's psychiatrist and neurologist, who were assigned by the University, that Plaintiff should be returned to work immediately in the position he held prior to May 16, 2011, as he was not mentally ill.  **(See Attachment 3)**

**36.**

Prior to May 16, 2011, Plaintiff held dual supervisory positions as President of Prairieland Energy Inc. ("PEI"), the energy purchase arm of the University, and

---

[13] Dr. David Marder at the U.I.C. medical center was to be the coordinator of Plaintiff's mental/psychological examination.

as an Assistant Vice President. Plaintiff was also a member of the Board of Directors of PEI.

**37.**

For seven months Plaintiff went through extensive testing.  After the tests were concluded in early December 2011, the lead doctor, Dr. Arthur Traugott, a psychiatrist for Carle Hospital, emphatically recommended to the University and all University personnel involved, including, but not limited to Maureen Parks with Human Resources, that Plaintiff should be returned to work without restrictions of any kind. Further, the examining medical doctors stated the only thing that Plaintiff suffers from is mild depression caused by not being allowed to work in his area of expertise **(See Attachment 3)**.  It was Dr. Arthur Traugott's personal belief that he openly expressed that the Plaintiff had in fact heard the noises made by Johnsons.

**38.**

In early December of 2011 Plaintiff met with Mike Bass, Plaintiff's new supervisor since Defendant Beckmann had retired, Maureen Parks and Defendant Painter. Both Ms. Parks and Defendant Painter were with Human Resources at the University.  There was some indifference as to when Plaintiff returned to work, but Defendant Painter and Ms. Parks finally settled on the first working day in 2012 as the return date. Ms. Parks decided, that due to Plaintiff's "impaired mental health", that Plaintiff would be restricted from supervising any people upon his return and

Plaintiff could not have anything to do with PEI, the energy arm of the University.

**(See Attachment 4)**

**39.**

During and after his return to work, despite the psychiatric findings that there was nothing wrong with Plaintiff, Defendant Painter and Defendant Beckmann continued to claim and/or indicated to people both within and outside the University and to potential employers of Plaintiff, that Plaintiff suffered from serious mental illness.

**40.**

Upon his return colleagues around the University shunned and avoided Plaintiff. Plaintiff was placed in an office without responsibility and was given work from time to time far below Plaintiff's proven capabilities. As example, before May 16, 2011, Plaintiff as Director of Energy Regulatory and Contracts, his initial position at the University, was able to recover $1.2 million from Commonwealth Edison for the University by finding a billing error against the University of Illinois at Chicago. Plaintiff also gave testimony related to a billing error committed by Ameren acting as billing agent for the Midcontinent Independent System Operator ("MISO") at the Urbana-Champaign campus. This required testimony was before the Federal Energy Regulatory Commission. Plaintiff was also able to use his

contacts and skills with Peoples Gas to recover over $800,000 worth of natural gas that was lost due to the application of a super compressibility adjustment.

Additionally, Plaintiff successfully obtained market participant status for the University's Chicago campus in the PJM Interconnection, the transmission operator that covers the Chicago area. This allowed the U.I.C campus to save substantial money on its energy settlements and on demand management. Plaintiff successfully negotiated major natural gas storage and transportation agreements with Peoples Gas that serves the Chicago campus of the University allowing U.I.C to save up to $4 million per year on gas distribution services. These contracts were negotiated in 2010, and after Plaintiffs return to campus in 2015 and 2020.

**41.**

None of the financial commitments made by the University to Plaintiff when Plaintiff took the management positions was ever realized.  In the alternative, after the series of events caused by the abuse of police power through the fabricated and illegal Police report written by Defendant Swaney as directed by Reinhart and the Johnson's which was illegally covered-up by Defendant Deputy Chief of Police Holly Nearing, the Plaintiff's career and lifestyle was ruined.

**42.**

Defendant Painter continued with depriving Plaintiff of his civil rights initiated by the Champaign Police Department, by monitoring Plaintiff directly or

- 18 -

through other University personnel including scrutinizing his computer usage by having his emails and work product electronically mirrored to Painter for her monitoring. Painter also censored and eavesdropped Plaintiff's telephone calls and received reports of any meetings which Plaintiff attended. Plaintiff Painter would try to covertly undermine any attempt Plaintiff made to get his job back with PEI. This "wiretapping" included video monitoring in what was supposed to be Plaintiff's "private office."

Personnel who sat outside Plaintiff's office handled the video surveillance of Plaintiff through and from the camera planted in his office. They often talked openly about what they had seen within earshot or listening distance of Plaintiff when Plaintiff was in his office. Plaintiff told Dr. Traugott[14] about these discussions he overheard and Painter's video monitoring of Plaintiff, Dr. Traugott response was "they should not have been talking about it" confirming he was aware of the video monitoring by Defendant Painter. This continual monitoring angered Dr. Traugott along with the virtual imprisonment of Plaintiff. **(See Attachment 4)**

## Count 1

## <u>Civil Conspiracy (State Law)</u>[15]

---

[14] Dr. Traugott was the psychiatrist assigned by the University to evaluate Plaintiff's mental state of mind.

[15] Under Illinois law, civil conspiracy is an intentional tort wherein two or more people come together, "'for the purpose of accomplishing by concerted action either

**43.**

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 42 above as if fully restated.

**44.**

Defendants Painter of the University of Illinois Human Resources Department in conjunction with Defendant Beckmann of the University of Illinois and unnamed John Does with the University of Illinois conspired against Plaintiff, additionally the Defendants named above with the City of Champaign Police Department also conspired all   maliciously and intentionally against Plaintiff for the purpose of injuring the Plaintiff, and depriving him of his property, liberty, and enjoyment of life.

**45.**

As a result of defendants' civil conspiracy, Plaintiff has suffered damages as described in Count 13 of this complaint entitled "Damages."

**Count 2**

**42 U.S.C. § 1983 – Violation of Civil Rights**

---

an unlawful purpose or a lawful purpose by unlawful means.' " McClure v. Owens Corning Fiberglass Corp., 188 Ill. 2d 102, 133 (1999) (quoting Buckner v. Atlantic Plant Maintenance, Inc., 182 Ill. 2d 12, 23 (1998))

**46.**

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 45 above as if fully restated.

**47.**

Defendants, acting under color and authority of state law, have maliciously and intentionally deprived Plaintiff of his rights, privileges, and immunities secured by the United States Constitution and its laws in violation of 42 U.S.C. § 1983.

**48.**

Defendant Champaign Police Department has maliciously and intentionally deprived Plaintiff of his First Amendment rights, including freedom of speech by retaliating against him for his communication with the Johnsons by seeking out his employer to terminate his employment for Plaintiff's attempt to stop the illegal actions of the Johnsons.

**49.**

University of Illinois personnel named above as Defendants have maliciously and intentionally deprived Plaintiff of his First Amendment rights, including freedom of speech, by holding a "Kangaroo Court" behind closed doors and not allowing the Plaintiff to speak in his defense, while pronouncing a sentence that destroyed Plaintiff's career, ruined his life and caused him endure mental pain and suffering for the remainder of his lifetime.

**50.**

Defendants have maliciously and intentionally deprived Plaintiff of his Fourteenth Amendment rights, including the prohibition against depriving persons of life, liberty, or property without due process of law and the prohibition against denying any person the equal protection of laws by intimidating, harassing, threatening, and interfering with their privacy and enjoyment of life without probable cause or substantial justification, using a Kangaroo Court system at the University of Illinois .

**51.**

As a result of Defendants' actions in depriving Plaintiff of his civil rights in violation of 42 U.S.C. § 1983, Plaintiff has suffered damages as described in Count 13 of this Complaint entitled "Damages."

**Count 3**

**Abuse of Due Process**

**52.**

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 51 above as if fully restated.

**53.**

Defendants Swaney and Frost maliciously and intentionally charged Plaintiff with a crime, without probable cause, without an investigation and with insufficient grounds for making such a charge.

**54.**

Defendants Swaney and Frost maliciously and intentionally delivered the criminal charge with the unfounded claim of the Plaintiff being a "<u>Paranoid Schizophrenic</u>" to the Plaintiffs' employer, the University of Illinois , for the Plaintiff to be judged and punished for the alleged crime without any hearing on an ex-parte basis by University personnel.

**55**

Defendant Deputy Chief Nearing covered-up through redaction key exonerating evidence materially favorable to the accused. Further Nearing failed to disclose other exculpatory evidence about the illegal police report.

**56.**

These actions and/or lack of action are violations of the Fourteenth Amendment to the United States Constitution.

**57.**

As a result of Defendants malicious prosecution of Plaintiff and their abuse of right to due process under the 14th Amendment to the United States Constitution, in

violation of 42 U.S.C. § 1983, Plaintiff has suffered damages as described in Count 13 of this Complaint entitled "Damages."

## Count 4

## <u>Obstruction of Justice (State Law)</u>

## 720 ILCS 5/31-4.

## 58.

This citation states it is a felony when:

A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:

(a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information; or

(b) Induces a witness having knowledge material to the subject at issue to leave the State or conceal himself; or

(c) Possessing knowledge material to the subject at issue, he leaves the State or conceals himself.

## 59.

Defendant Deputy Chief of Police Holly Nearing committed

"Obstruction of Justice" when she deliberately and knowingly covered-up through

redaction the unfounded medical diagnosis of Plaintiff being a "<u>Paranoid</u>

<u>Schizophrenic</u>" for the Defendant City of Champaign Police Depart in violation of

the Due Process Clause of the Fourteenth Amendment to the United States

Constitution.

Nearing oversaw enforcement of Administration and Professional Standards,

police policy and procedures for the City of Champaign Illinois Police Department.

Nearing as such not only covered up the unfounded diagnosis but based on her

training and experience did not report the other multiple violations of police policy

and procedure and the illegally of the police report.[16]

## Count 5

## <u>Wiretapping</u>

## <u>18 U.S.C. § 2510-22</u>

## <u>720 ILCS (State Law)</u>

## 59.

Defendant Painter intercepted records, or transcribes, in a surreptitious

manner, any private electronic communication to which he or she is not a party

---

[16] See footnote 8, herein above.

unless he or she does so with the consent of all parties to the private electronic communication.  Plaintiff never gave permission for Defendant Painter to take such actions.

**60.**

Further Defendant Painter used and/or disclosed information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of the law and did so without the consent of Plaintiff.

**Count 6**

**Intentional Infliction of Emotional Distress (State Law)**

**61.**

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 51 above as if fully restated.

**62.**

Defendants intentionally and maliciously injured Plaintiff and deprived him of his career, liberty, and enjoyment of life.

**63.**

Defendants intentionally and maliciously inflicted severe emotional distress on Plaintiff and Defendants' conduct was so outrageous that it exceeded all possible balance of decency and is utterly intolerable in a civilized community.

**64.**

Defendants have caused Plaintiff severe and emotional distress that no reasonable person could be expected to endure.

**65.**

As a result of Defendants' intentional and malicious infliction of emotional distress, Plaintiff has suffered damages described in Count 13 of this Complaint entitled "Damages."

**Count 7**

**Punitive Damages (State Law)**

**66.**

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 58 above as if fully restated.

**67.**

Defendants intentionally and maliciously injured Plaintiff, and Defendants' conduct evidences a willful, wanton, and reckless disregard of Plaintiff's rights.

**68.**

As a result of Defendants' intentional and malicious conduct, Plaintiff is entitled to a punitive damages award against the Defendants described in Count 13 of this Complaint entitled "Damages."

## Count 8

### Tortious Interference With Contract (State Law)

### 69.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 61 above as if fully restated.

### 70.

Defendants have maliciously and intentionally deprived Plaintiff of his property, liberty, and enjoyment of life and have tortuously interfered with his employment contract with the University of Illinois and his related contractual rights.

### 71.

As a result of Defendants' tortious interference with contract, Plaintiff has sustained damages as described in Count 13 of this Complaint and entitled "Damages."

## Count 9

### Libel and Slander (State Law)

### 72.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 71 above as if fully restated.

**73.**

Defendants Swaney, Frost, Deputy Chief Nearing, Painter and Beckmann have intentionally and maliciously conveyed false information and published false allegations about Plaintiff, falsely accused him of a crime, and being mentally ill to his business colleagues and friends.

**74.**

The purpose of making these false accusations was to injure the Plaintiff's reputation and assist the aforementioned Defendants in their goal of destroying the Plaintiff's career and subsequent cover-up the Defendants actions in that regard.

**75.**

As a result of the defamatory statements, Plaintiff 's reputation in the business community has been severely diminished and he has suffered damages as described in Count 13 of this Complaint entitled "Damages."

## Count 10

## Wrongful Discharge and Retaliation (State Law)

**76.**

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 68 above as if fully restated.

**77.**

On June 15, 2020, Plaintiff's employment with the University of Illinois will be ended.

**78.**

The basis of the termination of the Plaintiff was the abuse of police power by police officers with the Champaign Police Department and the subsequent decisions by the "Kangaroo Court" that endorsed the abuse of police power.

**79.**

Since the Plaintiff's recent discovery of the abuse of police power and the cover-up by the Defendants, Plaintiff has requested the University to recognize the law enforcements abuse of power, and to offer the Plaintiff a supervisory position that is open at the University and Plaintiff is both qualified for and has requested. The University can now address the "*abuse of police power*" and its de facto endorsement of its use on an unwitting individual who was part of the University Community.  These issues are now in the forefront of the interests of the American public.  Effectively, the University holding a "Kangaroo Court" which sentenced the Plaintiff to years of abuse by the University, is the antithesis of values of most of the American public about the abuse of police power.

**80.**

As a result of Plaintiff's wrongful discharge and retaliatory conduct of the Defendants, Plaintiff has suffered damages as described in Count 13 of this Complaint entitled "Damages."

## Count 11

## Vicarious Liability (State Law)

### 81.

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 80 above as if fully restated.

### 82.

The actions of the Defendant employees of the City of Champaign Police Department as described in this Complaint were performed within the course and scope of their employment with the City of Champaign Police Department.

### 83.

Under the doctrine of *respondent superior,* the Champaign Police Department is responsible for the actions of its employees.

### 84.

As a result of wrongful and illegal actions by the City of Champaign Police Officer Defendants, Plaintiff was wrongful discharged and suffered retaliatory conduct by the University of Illinois Defendants, Plaintiff has suffered damages as described in Count 13 of this Complaint entitled "Damages."

- 31 -

## Count 12

## <u>Negligence (State Law)</u>

### 85.

Negligence is a common law cause of action specifically recognized by Illinois courts. Illinois courts refer to three elements required to support a negligence claim, (<u>*Hartnett v. Boston Store of Chicago*</u>, 265 IL 331 (1914)) it is probably better to discuss five elements when explaining what constitutes cause of action for negligence. <u>*Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity*</u>, 155 Ill.App.3d 231 (4th Dist. 1987). The five elements are:

1. The existence of a duty,

2. the duty must be owed from the defendant to the plaintiff,

3. a breach of that duty,

4. injury or damages to the plaintiff, and

5. the injury or damages must be proximately caused by the defendant's breach of duty. Id.

Defendant Chief of Police R. T. Finney, and Defendant Chief of Police Anthony Cobb legally must maintain the policy and procedures throughout the Champaign Illinois Police Department. However, the Defendant Officers

clearly show there exists a *pattern and practice* of lack of enforcement of these policies including the officers being above the law.  Instead of enforcing the law the management of the police department did not take remedial action and instead they covered up the breaking of the law by Defendant police officers Sargent Thomas Frost and Michael Swaney.

**86.**

The Plaintiff's employer the University of Illinois should have immediately been notified of the illegal acts of the police officers against the Plaintiff.   The negligence of the two Police Chiefs in allowing the pattern and practice of the police officers under their command to both break the law and cover it up failed to enforce the standard of conduct owed to the Plaintiff, and as a result the Plaintiff was seriously injured.

**87.**

As a result of negligence, Plaintiff has suffered damages as described in Count 13 of this Complaint entitled "Damages."

**Count 13**

**Damages**

**88.**

Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 87 above as if fully restated.

**89.**

As a result of Defendants' malicious and intentional conduct, Plaintiff has a claim for lost wages and benefits dating back to May 16, 2011.

**88.**

As a result of Defendants' malicious and intentional conduct, Plaintiff has a claim for reinstatement to an equivalent position at the University that he had on May 16, 2011.

**89.**

As a result of Defendants' malicious and intentional conduct, Plaintiff has suffered chronic severe emotional pain and suffering.

**90.**

As a result of Defendants' malicious and intentional conduct, Plaintiff has been publicly humiliated, his reputation has been damaged, he has lost his stature in the community and his career has been ruined.

WHEREFORE, Plaintiff prays that he has a jury trial on all issues and judgment against the Defendants as follows:

  a. That Plaintiff recovers for the deprivation of his civil rights and liberties in an amount determined by the enlightened conscience of the jury;

b. That Plaintiff recovers for mental and emotional pain and suffering, psychological torture, and humiliation in an amount to be determined by the enlightened conscience of the jury;

c. That Plaintiff recover for past and future lost wages in an amount in excess of $2 million dollars;

d. That Plaintiff recover punitive damages in an amount not less than 2 million dollars;

e. That Plaintiff recover attorney's fees and cost of litigation as allowed under 42 U.S.C. § 1988 and state law;

f. That Plaintiff's record both within the City of Champaign Police Department and with the University related to the actions described above be expunged, and

g. That Plaintiff recover such other and further relief as is just and proper.


Respectfully Submitted by,

*Eugene L. Waas*

Gene L. Waas,
*Pro Se* Plaintiff
1611 Windward Pointe
Champaign, Ill 61821
(217) 954-0292


- 35 -